ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN (286202)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bcochran@rgrdlaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD AUGENBAUM, Individually and on Behalf of All Others Similarly Situated, | Case No.   8:25-cv-01003 |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| COMPASS DIVERSIFIED HOLDINGS, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, COMPASS GROUP MANAGEMENT LLC, ELIAS J. SABO, RYAN J. FAULKINGHAM, and STEPHEN KELLER, | |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Todd Augenbaum ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to plaintiff's own acts and on information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys.  The investigation included, among other things, review and analysis of U.S. Securities and Exchange Commission ("SEC") filings by and regarding Compass Diversified Holdings and Compass Group Diversified Holdings LLC (together, "Compass" or the "Company"), Compass's press releases, public information about Compass, including information posted on the Company's website and otherwise available on the Internet, and analyst and media reports about Compass.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa, and 28 U.S.C. §§1331 and 1337.

2.     The claims asserted herein arise under and are pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

3.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) and (c).  The branded consumer business majority owned by the Company at issue in this case maintains its principal executive offices in this District and the preparation of materially false and misleading statements occurred in substantial part in and from this District.  Certain of the Individual Defendants (defined below) also reside in this District.

4.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

1  including, but not limited to, the mails, interstate telephone communications, and the

2  facilities of the national securities markets.

3                              **NATURE OF THE ACTION**

4        5.      This is a federal securities class action brought on behalf of all

5  purchasers of publicly traded Compass securities between May 1, 2024 and May 7,

6  2025, both dates inclusive (the "Class Period"), seeking remedies under §§10(b) and

7  20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

8                                    **PARTIES**

9        6.      Plaintiff Todd Augenbaum purchased Compass securities during the

10  Class Period, as set forth in the certification attached hereto and incorporated by

11  reference herein, and suffered damages as a result.

12        7.      Defendant Compass Diversified Holdings is a publicly traded Delaware

13  statutory trust, the purpose of which is to hold 100% of the limited liability interests

14  of defendant Compass Group Diversified Holdings LLC (the "Trust").  The common

15  stock of the Trust is publicly traded on the New York Stock Exchange ("NYSE")

16  under ticker symbol "CODI."

17        8.      Defendant Compass Group Diversified Holdings LLC is a holding

18  company used to house the various operating companies that form the business of

19  Compass.

20        9.      Defendant Compass Group Management LLC ("CGM") is the manager

21  for Compass.   Compass pays management fees to CGM, which includes the

22  compensation paid to Compass's executive management, all of whom are employees

23  of CGM.   Pursuant to the Management Services Agreement applicable in 2024,

24  Compass paid CGM a quarterly management fee equal to 0.5% (2% annually) of its

25  consolidated adjusted net assets.

26        10.     Defendant Elias J. Sabo ("Sabo") served as Chief Executive Officer

27  ("CEO") and a director of Compass during the Class Period and as a regular trustee

28  of the Trust.  Defendant Sabo is also the managing member of defendant CGM.

11.     Defendant Ryan J. Faulkingham ("Faulkingham") served as the Chief Financial Officer ("CFO") of Compass and a regular trustee of the Trust during the Class Period until he stepped down, effective August 30, 2024.   Defendant Faulkingham was also an employee of defendant CGM.

12.     Defendant Stephen Keller ("Keller') has served as CFO of Compass and a regular trustee of the Trust since August 30, 2024.  Defendant Keller is also an employee of defendant CGM.

13.     Defendants Sabo, Faulkingham, and Keller (collectively, the "Individual Defendants") were each directly involved in the management and day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company and its most profitable consumer branded business, Lugano Holdings, Inc. ("Lugano"), and approved or ratified these statements, in violation of the federal securities laws.

14.     As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and trade on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, and present and future business prospects.  In addition, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to Compass's operations, business, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based

1  upon truthful and accurate information.  Defendants' false and misleading
2  misrepresentations and omissions during the Class Period violated these specific
3  requirements and obligations.

4      15.    The Individual Defendants, because of their positions of control and
5  authority as officers and/or directors of the Company, were able to, and did, control
6  the content of the various press releases and other public statements pertaining to the
7  Company during the Class Period.  Each Individual Defendant was provided with
8  copies of the public filings alleged herein to be misleading before or shortly after
9  their issuance, and/or had the ability and/or opportunity to prevent their issuance or
10 cause them to be corrected.  Accordingly, each Individual Defendant is responsible
11 for the accuracy of the public statements detailed herein and is, therefore, primarily
12 liable for the representations contained therein.

13 **FACTUAL BACKGROUND**

14     16.    Compass is a holding company and trust created for the purpose of
15 acquiring and managing a group of small and middle-market businesses
16 headquartered in North America.  The Company takes controlling interests in and
17 actively manages businesses that defendants claim: (i) operate in industries with
18 long-term macroeconomic growth opportunities; (ii) have positive and stable cash
19 flows; (iii) face minimal threats of technological or competitive obsolescence; and
20 (iv) have strong management teams largely in place.  Defendants represent that
21 Compass offers investors a unique opportunity to own a diverse group of leading
22 middle-market businesses in the branded-consumer, industrial, and healthcare and
23 critical outsourced services sectors that they might not otherwise have access to
24 outside the private equity industry.

25     17.    On September 7, 2021, Compass announced the acquisition of a
26 majority interest in Lugano, a designer, manufacturer, and marketer of high-end
27 jewelry, in a deal with an enterprise value of $256 million (excluding working capital
28 and certain other adjustments upon closing).  Based in Newport Beach, California,

1   Lugano designs and manufactures unique jewelry for the luxury goods market.
2   Lugano conducts sales via its own retail salons as well as pop-up showrooms at
3   Lugano-hosted or sponsored events in partnership with organizations in the
4   equestrian, art, and philanthropic communities. The acquisition substantially
5   increased the management fees paid by Compass to CGM (and thus the Individual
6   Defendants). For example, the fees paid to CGM in 2022 (the first full year after the
7   acquisition) equaled nearly $63 million, compared to approximately $35 million in
8   2020.

9       18.    Beginning in 2024, Lugano began purchasing inventory from a vendor
10  who is a related party to Lugano through one of the executive officers of Lugano.
11  That same year, Lugano sales growth accelerated. For the fiscal year ended
12  December 31, 2024, net revenue attributable to Lugano grew by more than $162
13  million year-over-year, accounting for over 21% of the Company's total net sales –
14  approximately double the proportion of Company sales attributable to Lugano just
15  two years previously. For fiscal 2024, Lugano also accounted for over 57% of
16  Compass's total operating income, making the business the most profitable among
17  all Company businesses. The strong sales at Lugano contributed to nearly $75
18  million in 2024 management fees paid to defendant CGM (which flowed through to
19  the Individual Defendants), a significant increase compared to prior years.

20      19.    On May 7, 2025, Compass announced that its 2024 financial statements
21  should no longer be relied upon. The Company stated that an ongoing investigation
22  into Lugano had identified "irregularities in Lugano's non-CODI financing,
23  accounting, and inventory practices." Compass also stated that Moti Ferder
24  ("Ferder"), founder and CEO of Lugano, had been terminated.

25      20.    As a result of these disclosures, Compass's stock price declined by
26  $10.70 per share, or 62%, on May 8, 2025, on abnormally high trading volume,
27  inflicting substantial financial losses and economic damages on plaintiff and other
28  members of the Class (defined below).

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING
STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD**

21.     The Class Period begins on May 1, 2024.  On that date, Compass issued a press release reporting its financial results for its first fiscal quarter ended March 31, 2024.  According to the release, during the quarter Compass's net sales increased 8% year-over-year to over $524 million and its adjusted earnings increased 73% year-over-year to more than $34 million.  The release stated that these favorable results were "driven by a 61% increase in Lugano net sales" to over $103 million during the quarter and adjusted quarterly EBITDA at Lugano of approximately $42 million.  The release also quoted defendant Sabo as stating that Lugano had a "'great first quarter[],'" which allowed the Company to raise its outlook.

22.     Also on May 1, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its first fiscal quarter of 2024.  The report contained the same financial information regarding Compass and Lugano's first quarter as provided in the Company-issued press release.  The report stated that there had "been no material changes in [Compass's] internal control over financial reporting" during the quarter.  The report was signed by defendant Faulkingham, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

23.     On July 31, 2024, Compass issued a press release reporting its financial results for its second fiscal quarter ended June 30, 2024.  According to the release, during the quarter Compass's net sales increased 11% year-over-year to approximately $543 million and its adjusted earnings increased 36% year-over-year to nearly $40 million.  The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to over $99 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $36 million.

- 6 -

24.     Also on July 31, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its second fiscal quarter of 2024.  The report contained the same financial information regarding Compass and Lugano's second quarter as provided in the Company-issued press release.  The report stated that there had "been no material changes in [Compass's] internal control over financial reporting" during the quarter.  The report was signed by defendant Faulkingham, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

25.     On October 30, 2024, Compass issued a press release reporting its financial results for its third fiscal quarter ended September 30, 2024.  According to the release, during the quarter Compass's net sales increased 12% year-over-year to approximately $583 million and its adjusted earnings increased 65% year-over-year to nearly $49 million.  The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to approximately $119 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $51 million.

26.     Also on October 30, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its third fiscal quarter of 2024.  The report contained the same financial information regarding Compass and Lugano's third quarter as provided in the Company-issued press release.  The report stated that there had "been no material changes in [Compass's] internal control over financial reporting" during the quarter.  The report was signed by defendant Keller, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

27.     On February 27, 2025, Compass issued a press release reporting its financial results for its fourth fiscal quarter and year ended December 31, 2024.

According to the release, during the fourth quarter Compass's net sales increased 14% year-over-year to more than $620 million and its adjusted earnings increased 29% year-over-year to over $118 million. The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to nearly $150 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $66 million.

28. Also on February 27, 2025, Compass filed with the SEC an annual report on Form 10-K for its fiscal year 2024. The report contained the same financial information regarding Compass and Lugano's fourth quarter and full year 2024 as provided in the Company-issued press release. The report stated that there had "not been any changes in the Company's internal control over financial reporting" during the fourth quarter. The report was signed by defendants Keller and Sabo, and both defendants filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

29. The statements identified in ¶¶21-28 above were materially false and/or misleading when made. The true facts, which were known to or recklessly disregarded by the Individual Defendants, were that:

(a) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2024;

(b) Lugano's 2024 financial results had been artificially distorted by these irregularities;

(c) Compass had failed to implement effective internal controls over the Company's financial reporting; and

(d) as a result of (a)-(c) above, Compass's reported 2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

30.    Then, on May 7, 2025, Compass announced that its 2024 financial statements should no longer be relied upon.  The Company stated that an ongoing investigation into Lugano had identified "irregularities in Lugano's non-CODI financing, accounting, and inventory practices."  Compass also stated that Ferder, founder and CEO of Lugano, had been terminated.  The release stated in pertinent part as follows:

> Compass Diversified (NYSE: CODI) ("CODI") today disclosed non-reliance on its financial statements for fiscal 2024 amid an ongoing internal investigation into its subsidiary, Lugano Holding, Inc.  It also announced that it intends to delay the filing of its first quarter 2025 Form 10-Q.

> The Audit Committee of CODI's Board of Directors promptly launched an investigation after CODI's senior leadership was made aware of concerns about how Lugano was potentially financing inventory.  The investigation, led by outside counsel and a forensic accounting firm, is ongoing but has preliminarily identified irregularities in Lugano's non-CODI financing, accounting, and inventory practices.  After discussing with senior leadership and investigators, the Audit Committee of CODI's Board has concluded that the previously issued financial statements for 2024 require restatement and should no longer be relied upon.

> Effective May 7, 2025, Lugano's founder and CEO, Moti Ferder, resigned from all of his positions at Lugano and will not receive any severance compensation.

31.    As a result of these disclosures, Compass's stock price declined by $10.70 per share, or 62%, on May 8, 2025, on abnormally high trading volume of over 14 million shares traded.  Compass preferred shares also suffered significant price declines, inflicting substantial financial losses and economic damages on

1  plaintiff and other members of the Class.  For example, Compass Preferred C shares

2  declined by $6.91 per share, or 30%, on May 8, 2025, on abnormally high trading

3  volume of over 600,000 shares traded.

4      32.    As a result of defendants' wrongful acts and omissions, and the

5  precipitous decline in the market value of Compass securities, plaintiff and other

6  Class members have suffered significant losses and damages under the federal

7  securities laws.

8                          **CLASS ACTION ALLEGATIONS**

9      33.    Plaintiff brings this action as a class action on behalf of a class

10  consisting of all persons who purchased publicly traded Compass securities during

11  the Class Period (the "Class").  Excluded from the Class are defendants and their

12  families, the officers, directors, and affiliates of defendants, at all relevant times, and

13  members of their immediate families, and their legal representatives, heirs,

14  successors, or assigns, and any entity in which defendants have or had a controlling

15  interest.

16     34.    The members of the Class are so numerous that joinder of all members

17  is impracticable.  Throughout the Class Period, Compass common stock and

18  Compass preferred stock were actively traded on the NYSE.  While the exact number

19  of Class members is presently unknown to plaintiff and can only be ascertained

20  through appropriate discovery, plaintiff believes that they number in the hundreds

21  or thousands.  The names and addresses of the Class members can be ascertained

22  from the books and records of Compass or its transfer agent.  Notice can be provided

23  to such record owners by a combination of published notices and first-class mail,

24  using techniques and a form of notice similar to those customarily used in class

25  actions arising under the federal securities laws.

26     35.    Plaintiff's claims are typical of the claims of the other Class members,

27  as all Class members are similarly affected by defendants' wrongful conduct in

28

1    violation of federal law that is complained of herein.  Plaintiff does not have any

2    interests antagonistic to, or in conflict with, the Class.

3         36.    Plaintiff will fairly and adequately protect the interests of the Class

4    members and has retained counsel competent and experienced in class action and

5    securities litigation.

6         37.    Common questions of law and fact exist as to all Class members and

7    predominate over any questions solely affecting individual Class members.  Among

8    the questions of law and fact common to the Class are:

9              (a)    whether defendants' statements during the Class Period were

10   materially false and misleading;

11             (b)    whether defendants acted with scienter in issuing materially false

12   and misleading statements during the Class Period; and

13             (c)    the extent of injuries sustained by the Class members and the

14   appropriate measure of damages.

15        38.    A class action is superior to other available methods for the fair and

16   efficient adjudication of this controversy.  Since the damages suffered by individual

17   Class members may be relatively small, the expense and burden of individual

18   litigation make it virtually impossible for the Class members to seek redress for the

19   wrongful conduct alleged.  Plaintiff knows of no difficulty that will be encountered

20   in the management of this litigation that would preclude its maintenance as a class

21   action.

22                    **ADDITIONAL SCIENTER ALLEGATIONS**

23        39.    As alleged herein, defendants acted with scienter in that defendants

24   knew, or recklessly disregarded, that the public documents and statements they

25   issued and disseminated to the investing public in the name of the Company, or in

26   their own name, during the Class Period were materially false and misleading.

27        40.    The Individual Defendants, because of their positions with Compass,

28   controlled the contents of Compass's public statements during the Class Period.  The

1    Individual Defendants were each provided with or had access to the information

2    alleged herein to be false and/or misleading prior to or shortly after its issuance and

3    had the ability and opportunity to prevent its issuance or cause it to be corrected.

4    Because of their positions and access to material, non-public information, the

5    Individual Defendants knew or recklessly disregarded that the adverse facts

6    specified herein had not been disclosed to and were being concealed from the public

7    and that the positive representations that were being made were false and misleading.

8    As a result, each of the defendants is responsible for the accuracy of Compass's

9    corporate statements and is, therefore, responsible and liable for the representations

10   contained therein.

11        41.    The Individual Defendants also had the motive and opportunity to

12   commit fraud.  By artificially inflating the adjusted net assets of the Company, which

13   included assets attributable to Lugano, the Individual Defendants earned millions of

14   dollars in excess compensation by virtue of the management fees paid to CGM by

15   Compass.

16                            **LOSS CAUSATION**

17        42.    During the Class Period, as detailed herein, defendants engaged in a

18   scheme to deceive the market and a course of conduct that artificially inflated the

19   price of Compass securities and operated as a fraud or deceit on Class Period

20   purchasers of Compass securities by failing to disclose and misrepresenting the

21   adverse facts detailed herein.   When defendants' prior misrepresentations and

22   fraudulent conduct were disclosed and became apparent to the market, the price of

23   Compass securities declined significantly as the prior artificial inflation came out of

24   the stock's price.

25        43.    As a result of their purchases of Compass securities during the Class

26   Period, plaintiff and other Class members suffered economic loss, *i.e.*, damages,

27   under the federal securities laws.  Defendants' false and misleading statements had

28   the intended effect and caused Compass securities to trade at artificially inflated

1  levels throughout the Class Period, with Compass common stock trading as high as

2  $24 per share.

3          44.    By concealing from investors the adverse facts detailed herein,

4  defendants presented a misleading picture of Compass's business, risks, and future

5  financial prospects.  When the truth about the Company was revealed to the market,

6  the price of Compass securities fell significantly, with the price of Compass common

7  stock dropping by more than 70% from Class Period highs as the prior artificial

8  inflation in the share price dissipated, causing economic loss to investors who had

9  purchased Compass securities during the Class Period.  Compass preferred stock

10  suffered similar precipitous declines.

11          45.    The decline in the price of Compass securities after the corrective

12  disclosures came to light was a direct result of the nature and extent of defendants'

13  fraudulent misrepresentations being revealed to investors and the market.  The

14  timing and magnitude of the price decline in Compass securities negate any

15  inference that the losses suffered by plaintiff and the other Class members were

16  caused by changed market conditions, macroeconomic or industry factors, or

17  Company-specific facts unrelated to defendants' fraudulent conduct.

18          46.    The economic loss, *i.e.*, damages, suffered by plaintiff and the other

19  Class members was a direct result of defendants' fraudulent scheme to artificially

20  inflate the price of Compass securities and the subsequent significant declines in the

21  value of Compass securities when defendants' prior misrepresentations and other

22  fraudulent conduct were revealed.

23                **APPLICABILITY OF PRESUMPTION OF RELIANCE:**
                           **FRAUD ON THE MARKET**
24

25          47.    At all relevant times, the market for Compass securities was an efficient

26  market for the following reasons, among others:

27

28

- 13 -

1        (a)    Compass common stock and Compass preferred stock met the

2  requirements for listing and were listed and actively traded on the NYSE, a highly

3  efficient, national stock market;

4        (b)    as a regulated issuer, Compass filed periodic public reports with

5  the SEC;

6        (c)    Compass regularly communicated with public investors via

7  established market communication mechanisms, including the regular dissemination

8  of press releases on the national circuits of major newswire services and other wide-

9  ranging public disclosures, such as communications with the financial press and

10  other similar reporting services; and

11        (d)    Compass was followed by securities analysts employed by major

12  brokerage firms who wrote reports that were distributed to the sales force and certain

13  customers of their respective brokerage firms.  Each of these reports was publicly

14  available and entered the public marketplace.

15     48.   As a result of the foregoing, the market for Compass securities

16  promptly digested current information regarding Compass from all publicly

17  available sources and reflected such information in the price of Compass publicly

18  traded securities.  Under these circumstances, all purchasers of Compass securities

19  during the Class Period suffered similar injury through their purchases of Compass

20  securities at artificially inflated prices, and the losses they suffered when the

21  artificial inflation was removed, and a presumption of reliance applies.

22     49.   A Class-wide presumption of reliance is also appropriate in this action

23  under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406

24  U.S. 128 (1972), because the claims are grounded, in significant part, on defendants'

25  material omissions.  Because this case involves defendants' failure to disclose

26  material, adverse information regarding facts critical to Compass's business and

27  operations – information that defendants were obligated to disclose – affirmative

28  proof of reliance is not a prerequisite to recovery.  All that is necessary is that the

1  facts withheld be material in the sense that a reasonable investor might have

2  considered them important in making investment decisions. Given the importance

3  of defendants' material misstatements and omissions set forth above, that

4  requirement is satisfied here.

5                              **NO SAFE HARBOR**

6      50.    The statutory safe harbor provided for forward-looking statements

7  under certain circumstances does not apply to any of the false or misleading

8  statements alleged herein. Defendants' false and misleading statements alleged

9  herein were not forward-looking. Many of the statements alleged were not identified

10 as "forward-looking" when made, and, to the extent any statements were forward-

11 looking, there were no meaningful cautionary statements identifying important

12 factors that could cause actual results to differ materially from those in the

13 purportedly forward-looking statements.

14     51.    Alternatively, to the extent that the statutory safe harbor applies to any

15 forward-looking statements alleged, defendants are liable for such statements

16 because, at the time they were made, the speaker knew that the particular forward-

17 looking statement was false, and/or the forward-looking statement was authorized

18 and/or approved by an executive officer of Compass who knew the statement was

19 false when made. Moreover, to the extent that defendants issued any disclosures

20 designed to warn or caution investors of certain purported risks, those disclosures

21 were also false and misleading since they did not disclose that defendants were

22 actually engaging in the very actions about which they purportedly warned and/or

23 had actual knowledge of material, adverse facts undermining such disclosures.

24                                **COUNT I**

25          **For Violation of §10(b) of the Exchange Act and**
            **Rule 10b-5 Promulgated Thereunder**
26                   **Against All Defendants**

27     52.    Plaintiff repeats and realleges each and every allegation contained in

28 the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a)    employed devices, schemes, and artifices to defraud;

    (b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Compass securities during the Class Period.

55.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Compass securities. Plaintiff and the Class would not have purchased Compass securities at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

56.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other Class members suffered damages in connection with their purchases of Compass securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

57.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Compass within the meaning of §20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Compass, the Individual Defendants had the power and authority to cause Compass and its employees to engage in the wrongful conduct complained of herein.  Compass controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such further relief as the Court may deem just and proper.

1

## JURY DEMAND

2    Plaintiff hereby demands a trial by jury.

3    DATED:  May 12, 2025                    ROBBINS GELLER RUDMAN
                                              & DOWD LLP
4                                             BRIAN E. COCHRAN (286202)

5

6                                              s/ Brian E. Cochran
                                              BRIAN E. COCHRAN

7
                                              655 West Broadway, Suite 1900
8                                             San Diego, CA  92101
                                              Telephone:  619/231-1058
9                                             619/231-7423 (fax)
                                              bcochran@rgrdlaw.com
10
                                              ROBBINS GELLER RUDMAN
11                                             & DOWD LLP
                                              SAMUEL H. RUDMAN
12                                            58 South Service Road, Suite 200
                                              Melville, NY  11747
13                                            Telephone:  631/367-7100
                                              631/367-1173 (fax)
14                                            srudman@rgrdlaw.com

15                                            ABRAHAM, FRUCHTER &
                                              TWERSKY, LLP
16                                            JEFFREY S. ABRAHAM
                                              450 Seventh Avenue, 38th Floor
17                                            New York, NY  10123
                                              Telephone:  212/279-5050
18                                            212/279-3655 (fax)
                                              iabraham@aftlaw.com

19                                            Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF PLAINTIFF
### PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Todd Augenbaum ("Plaintiff"), certify under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1.     Plaintiff has reviewed a Complaint for Violations of the Federal Securities Laws (the "Complaint") against Compass Diversified Holdings and Compass Group Diversified Holdings LLC (together, "Compass" or the "Company"), Compass Group Management LLC, Elias J. Sabo, Ryan Faulkingham, and Stephen Keller and authorized its filing.

2.     Plaintiff did not purchase any security that is the subject of the Complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     All of Plaintiff's transactions in Company securities during the class period specified in the complaint are set forth in Exhibit A attached hereto.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to this date.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

7.    Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May, 2025.

_____

Todd Augenbaum

COMPASS

## EXHIBIT A

| Transaction | Security | Trade Date | Shares Transacted | Price | Amount |
|---|---|---|---|---|---|
| Class Start | | 05/01/2024 | | | |
| Buy | Compass Series C Cumulative Preferred Shares | 04/03/2025 | 100 | $22.00 | $2,200.00 |
| Buy | Compass Series C Cumulative Preferred Shares | 04/07/2025 | 100 | $21.1918 | $2,119.18 |
| Class End | | 05/07/2025 | | | |

- 3 -

COMPASS